FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD
COMPANY V. SHERRY LESLIE.

FILED JUNE 6, 1894.   No. 5182.

1. **Master and Servant:** NEGLIGENCE. The evidence in this
case examined, and *held* to support the findings of the jury, that
the injury sued for herein by the defendant in error was not
caused or contributed to by his negligence, but resulted from
the negligence of the employes of the plaintiff in error.

2. **Personal Injuries:** DAMAGES. The law, for a temporary in-
jury, awards damages to the party injured through the negli-
gence of another, not as a punishment of the negligent party,
but as compensation for the pecuniary loss sustained and the
pain and suffering endured by the injured party.

3. **Negligence:** PERSONAL INJURIES: REVIEW. It is only after
the most careful deliberation that this court will reduce the
amount awarded by a jury to a party who has been injured
through the negligence of another; and not then if such award
has for its support sufficient competent evidence.

4. ———: ———: ———: REMITTITUR. The amount awarded the
defendant in error by the jury in this case *held* not supported
by the evidence and a remittitur ordered.

ERROR from the district court of Holt county. Tried
below before KINKAID, J.

*John B. Hawley* and *B. T. White,* for plaintiff in error.

*H. E. Murphy* and *M. F. Harrington, contra.*

RAGAN, C.

Sherry Leslie sued the Fremont, Elkhorn & Missouri
Valley Railroad Company in the district court of Holt
county for damages for an injury which he alleges he sus-
tained through the negligence of the employes of that
company. Leslie had a verdict and judgment, and the
company brings the case here on error and alleges five
reasons for the reversal of the judgment.

1. That the evidence does not support the jury's finding that the injury received by Leslie was the result of the negligence of the company's employes. The undisputed evidence is that on the 5th of December, 1887, Leslie and some eight other men were in the employ of the company and under the charge of a foreman named Howlett. This force of men was on that date engaged in constructing an ice-break to protect a bridge of the company across the Cheyenne river by driving piles in said stream; that in said work they used a pile-driver, some thirty feet high, and a hammer weighing some 2,600 pounds. To elevate this hammer a team of horses was hitched to the end of a rope and this passed over a wheel or pulley at the top of the pile-driver. The pile-driver was stayed by means of three guy-ropes. Early in the morning on the date above mentioned, while Leslie was on or near the top of this pile-driver oiling the aforesaid wheel or pulley, the pile-driver fell and Leslie was injured. The evidence on the part of Leslie tends to show that it was his duty to oil the wheel or pulley; that he was on the pile-driver at the time it fell for that purpose; that he was there in obedience to the orders of the foreman; that while engaged in oiling the wheel the other men, in obedience to the order of the foreman, began moving the pile-driver by means of "pinching it" with crow-bars; that only one man had charge of the guy-rope staying the pile-driver in the direction which the men were moving it; that it was necessary that said guy-rope should be in charge of two men when the pile-driver was being moved so as to take up the slack in such guy-rope; that the hammer was at the time near the top of said pile-driver; that he did not know that the men were about to move said pile-driver when he went upon it; that no warning was given him while on the pile-driver that it was about to be moved; that it was improper or unusual to move or attempt to move the pile-driver when the hammer was so near the top; that the failure to

have at least two men in charge of said guy-rope to take up the slack in the same and the having the hammer so near the top of the pile-driver caused the same to fall. This moving of the pile-driver by the men while he was on the same oiling the wheel and at the time the hammer was so near the top of said pile-driver and the failure to have more than one man in charge of the guy-rope constituted the grounds of negligence alleged against the company by Leslie in his petition.   The evidence on the part of the company tends to show that at the time the pile-driver fell the hammer was resting on a "chalk" not more than twelve feet from the base of the pile-driver; that it was not unusual, improper, or dangerous to move said pile-driver with the hammer in that position; that one man was sufficient to take up the slack in the guy-rope when the pile driver was being moved; that Leslie was not ordered or directed to go upon the pile-driver at the time he did; that he had been cautioned not to go upon the pile-driver when it was to be moved or about to be moved; that he knew before going upon the pile-driver that it was about to be moved; that he was on the pile-driver when it was being moved and gave no notice to the men moving it of his position; that neither the foreman in charge of the men nor the men engaged in "pinching" the pile-driver knew of Leslie's presence thereon until it fell; and that the pile-driver was caused to fall by a sudden gust of wind.   It will be seen from this statement that the evidence as to the cause of the fall of the pile-driver was sharply conflicting.   Had the jury found for the company on this issue we certainly could not say that their finding was unsupported by the evidence. If the statements made by the witnesses for Leslie were true, we think the jury's conclusion, that the fall of the pile-driver and Leslie's injury was due to the negligence of the company's employes.

2. That the evidence shows that the injury sustained by Leslie was caused by his contributory negligence.   All

that has been said in reference to the jury's finding in reference to the negligence of the company is equally applicable to the contention that Leslie was injured through his contributory negligence. We cannot say that Leslie knew before going upon the pile-driver that the men were about to move it and continued so doing for a considerable time before it fell without his warning the men of his presence; nor that he was not ordered to go upon the pile-driver at the time he did. These were all questions submitted to the jury upon conflicting testimony and under proper instructions by the trial court.

3. The third argument is that the court erred in giving certain instructions to the jury. We cannot consider the error alleged as to the first instruction, for the reason that the company took no exception to the giving of the same. The third instruction objected to was in the following language : " The jury are instructed that to entitle plaintiff to recover, the burden of proof rests upon him to show by a preponderance of all the evidence that his falling from the pile-driver in question and any injury and damage thereby suffered by him was the direct and proximate result of the negligence of the defendant railroad company by some negligent act of omission or some negligent act of commission permitted or directed by its foreman or managing officer there on the ground, J. N. Howlett; and in addition thereto that the plaintiff was not guilty of negligence on his own part which contributed to such fall, and without which negligence such fall, injuries, and damages would not have occurred." The objection to this instruction is in effect that by it the jury were told that the company might be charged with any negligent act of its foreman which was the proximate cause of the pile-driver's falling and Leslie's injury, whether such negligent act was pleaded by Leslie in his petition or not. This objection is not tenable. No evidence was offered on the trial of the case tending to show that Leslie's alleged injury was caused by any

negligent act or omission of the company's other than those stated in his petition; and the trial court in giving this instruction had in mind no act or omission of the company's claimed to be negligent and claimed to have caused Leslie's injury except the ones pleaded by him; nor could the jury have acted like reasonable men and have understood that they could charge the company with any negligence which was neither pleaded nor proved on the trial.

4. The fourth argument relates to the refusal of the trial court to give to the jury the following instructions:

(a.) "You are instructed that the burden of proof is upon the plaintiff to prove every material allegation contained in his petition, and this he must do by a preponderance of all the evidence." There was no error in refusing to give this instruction as the court had already given the substance of it in the third paragraph of its charge.

(b.) "You are instructed that the defendant is only bound to use ordinary care to prevent an injury to the plaintiff while in its employ, but plaintiff, when he entered defendant's employment, is deemed to have accepted all the ordinary hazards and dangers incident to the business in which he was engaged not occasioned by defendant's negligence, and in this case the injury complained of was one of the ordinary risks connected with the business in which the plaintiff was engaged and for which he cannot recover, unless you find from a preponderance of the evidence that the same was caused by the defendant's negligence and that plaintiff in no way contributed thereto." There was no error in refusing to give this instruction. The court had already in the third paragraph of his instructions to the jury in substance told the jury that the plaintiff could not recover unless he established by a preponderance of the evidence that his injury was caused by the defendant's negligence and without any contributory negligence on his part; and in the twenty-third instruction given by the court at the request of the company the jury were told that

the company was not an insurer against accidents happening to employes in its service, nor liable for any negligence on the part of defendant's co-employes who were working with him about said pile-driver.

(c.) " You are instructed that even though you may find that defendant was guilty of negligence as alleged in plaintiff's petition, still if you further find that plaintiff went upon said pile-driver knowing the same was about to be moved, or went upon the same while it was being moved, and continued thereon during its movement and had sufficient time prior to the fall of the pile-driver to have escaped from his position, but failed so to do, and sustained injuries in consequence by being thrown to the ground by said machine while it was falling, then the plaintiff cannot recover." The court did not err in refusing to give this instruction. At the request of the company the court told the jury that Leslie was bound to exercise ordinary care for his personal safety while performing his duties, upon, around, or about said pile-driver, and that if they believed from the evidence that Leslie was guilty of slight negligence which contributed directly to his injury they should find for the company. In the eighteenth instruction given at the request of the company the court told the jury that if they found that the company was guilty of negligence in the management of the pile-driver while moving the same, and that Leslie was also guilty of negligence which contributed to his injury and which by the exercise of ordinary care he might have avoided, then he could not recover.

5. The fifth argument is that the damages are excessive. The verdict in this case was for $5,000. The trial judge compelled Leslie to remit $2,350 of the verdict rendered or submit to have it set aside. The remittitur was entered and judgment rendered for $2,650. It is now somewhat strenuously argued that even this amount is greater than is warranted by the evidence. The testimony on the part

of Leslie tends to show that at the time the pile-driver fell his shoulder was dislocated and his ankles sprained or bruised; that from that time until the time of the trial he had been able to do only light work; that prior to the accident he was sound and robust and able to do heavy work; that he suffered constantly from pains in his back and sides and was able to use only one of his arms freely. The testimony on behalf of the company tends to show that he was laid up for about ten days as the result of the injury received; that he continued in the employ of the company from the first of January, 1888, until September of that year, working with the same force of men and in performing the same kind of labor that he had been engaged prior to the time of the accident; that in the spring of 1889 he went to the Black Hills and worked for about nine months of that year in saw-mills, performing heavy labor; that early in the year 1890 he "took up a claim" in Boyd county and that he told the citizens of that county that he could not work because of the pendency of this suit, and that if he labored that fact would injure his chances of success; that while he was in Boyd county he became involved in an altercation and kicked in the upper panel of a door several feet from the ground; and that a part of that year he operated a ferry-boat on the Niobrara river which required the exercise of considerable strength. We think this judgment is too large. The law gives damages to a party injured through the negligence of another, not as punishment of the negligent act, but as compensation for the pecuniary loss sustained and the pain and suffering endured by the injured party. There is no evidence in this record that Leslie was permanently injured. The evidence does not show that by reason of the fall and injury on the 5th day of December, 1887, Leslie has lost any considerable time; nor does the record show that he has undergone any severe suffering or pain. If Leslie, by reason of his injury, has been put to any expense for medi-

cal services or nurses, the record does not show it. The evidence in the record does support the jury's finding that Leslie was injured; that he was injured through the negligence of the employes of the company; and that his injury was not the result of his own contributory negligence. At the time of his injury he was a young man about twenty-six years of age and earning about $50 a month, and the evidence, to give it the most liberal construction in Leslie's favor, does not disclose that his ability to labor and to earn money is materially different from what it was before the date of the accident. The evidence does not disclose that from the time of the accident until the date of this trial, a period of about three years, that he was idle more than one-third of the time from all causes, and as a result of the injury sustained not more than a few months.

It is always with reluctance and after the most careful examination that this court will reduce the amount awarded by a jury to a party who has been injured through the negligence of another, and not then if the award made by the jury has for its support any competent evidence; but in the case at bar we cannot escape the conviction that a very large part of this award has for its support no evidence whatever. The defendant in error will have permission to file in this court, within twenty days from this date, a remittitur from the judgment rendered as of that date of $1,450, and in case of his doing so the judgment of the district court for $1,200, as of the date of its rendition, will be affirmed; otherwise the judgment of the district court will be reversed and the cause remanded.

JUDGMENT ACCORDINGLY.